The next case is number 2010, 1151, Taylor Brands, LLC, against the GB2 Corporation. Mr. Lawless. Good morning, Your Honor. Peter Lawless of the firm of Novak, Roos, and Quigg for the appellant Taylor Brands. Taylor Brands admits that the lower court erred in improperly construing the claims, failing to resolve doubtful evidence in favor of the non-moving party, and failing to find a genuine issue of material fact. And for such reasons, we believe that the case should be reversed and remanded with proper instructions with respect to claim construction. With respect to claim construction, the single independent claim in the patented issue provides for, and I quote, a set block situated at one side of the blade having a detent notch in the circumferential edge at the confluence of the maximum outer diameter and minimum outer diameter. The court misconstrued the disposition of the term at as protruding, making reference to the specification and having commented that a picture is worth a thousand words, clearly referring to the preferred embodiment illustrated in the patent. The court improperly construed the configuration of the set block, finding it to be, and I quote, an irregularly shaped piece of metal, somewhat round, with a detent notch cut into it, making reference actually to the commercial product of the appellant Taylor Brands. Now, so you're saying that the notch, or the, I'm sorry, that the set block does not have to protrude? Yes. It doesn't have to be? It does not have to protrude. How then do you have a, we agree the set block has to have a circumferential edge, correct? Yes. How do you have an edge if there's not something around which there can be an edge? And how can there be that kind of thing if there's not a protrusion? Well, a circumferential edge is nothing more than a boundary. And as we pointed out in our brief, that can be an imaginary line. And it's defined by the maximum outer diameter and the minimum outer diameter that intersect. And when they intersect, it produces a confluence, and that detent is in that confluence on the circumferential edge. Now, the court construed the set block as an irregularly shaped piece of metal, somewhat round with a detent notch cut into it. It did not indicate at all any construction with respect to circumferential edge, maximum or minimum outer diameter, or confluence. It did say it had to protrude. Pardon? It did say it had to protrude. I mean, you would say that, but didn't the court say it had to be protruding? Yes, the court did say that it had to protrude. But we would submit that the court erred in restricting the term at to mean protruding, and that there is no language in the claims, in the specification, or the prosecution history that would restrict the term at to be protruding, or what you might say onto. And we would refer to the doctrine of claim differentiation as applied to claims one and seven, which infers that the term at is greater than onto. Claim seven provides for the set block being onto, which actually describes the preferred embodiment of the invention as illustrated and described in the specification. The claim of the only, excuse me. Please, go ahead. Well, you say the preferred embodiment, but actually the only embodiment. I'm sorry? I say, yes, indeed, the preferred embodiment, but it's also the only embodiment. So you're asking us to infer that embodiments were contemplated that are not shown or suggested. Yes. We do say that the preferred embodiment is not the only embodiment. But it is the only embodiment shown in the specification and drawings. That is correct. But the claims, the specification, and the prosecution history do not restrict the scope of the term at to being protruding or onto. And again, we would refer to the doctrine of claim differentiation as applied to claims one and seven. Claim seven provides that the set block is onto, which actually reads on the preferred embodiment. But the main claim, the single independent claim, provides at, which has a broader definition. And since there is no restriction in the claims, the specification, or the prosecution history, then it is proper to refer to extrinsic evidence, which would be a dictionary definition, or at least the ordinary and customary definition of the term to be in, on, or near. But counsel, your claim differentiation argument, claim differentiation as a principle suggests that the reason that we differentiate is we don't want two claims to have the exact same scope. Otherwise, that redundancy is sort of, we assume it was not intended. But claim seven has an additional limitation that is added. Namely, it says it has to be joined by utilizing a pivot shaft. Well, there's nothing in claim one about the use of a pivot shaft. So claim seven has and does add a dependent limitation that differentiates it from claim one. Quite frankly, I think it takes your claim differentiation argument away. Because claim differentiation means we presume there to be different meaning. And if the words appear the same but are slightly different, maybe we should focus on them and give them different meaning for that reason. But there is a pivot shaft in any circumstance because the blade is pivoted to the handle. And that would indicate that both the blade and the set block would be pivoted with respect to that pivot. And whether it protrudes or whether it's embedded within the tang portion of the blade. Well, claim one doesn't say that it has to be joined at the handle by use of a pivot shaft. It does say it has to be pivotable. But it doesn't say joined by use of a pivot shaft. And so why isn't that an additional limitation that claim seven is adding on to claim one? I mean, where in claim one is there a requirement of utilizing a pivot shaft to effectuate the pivoting? Well, I don't see how it can pivot without having a shaft, Your Honor. So you think that the word at and the word on represent a large difference in the claim and that's the reason that claim seven and claim one are different. But this whole sentence about utilizing a pivot shaft is redundant of claim one? Claim seven does nothing more but indicate one version of this, which is having it onto, which is shown as the preferred embodiment in the patent itself. Now, with respect to resolving doubtful evidence in favor of the non-movement party, we would point to the declaration of Walter Collins in evidence, which qualifies him as an expert, indicates that he reviewed and considered the patent and the accused knife, indicates that he understands the construction of the claimed and the accused knives, explains the meaning of claim elements, identifies the accused knife as having a set block within the envelope of the claim, and finds that the set block within and without the envelope of the blade are structural and functional equivalents producing the same results. The court failed to resolve any doubt with respect to the declaration of Mr. Collins in favor of Taylor Brams, stating, With all due respect to Mr. Collins, he strains rather badly to create a set block on the rear edge of CRKT's knives when there is none. With respect to the matter of a genuine issue of material fact, assuming the term at is properly construed as in, there is an issue whether a mass of material in the end of the blade constitutes a set block. Assuming the term at has been properly construed as protruding, there is an issue of whether a mass of material in the end of the blade taken as a set block is a structural and functional equivalent and produces the same result as a protruding mass of material taken as a set block. Just one question I just want to confirm. I guess you've been talking about the Collins declaration we have at A456 of the Joint Appendix. And he has, at A458, he refers to the terms minimum outer diameter and so forth, and then he goes to Figure 1. That's where we can see, is it not, at 462, A462, that's what shows us, in your view, the meaning of minimum and outer diameter, correct? This is Exhibit 1 to the Collins declaration at A462. That is one, yes. Okay, so that, in other words, if we're trying to understand what minimum and outer diameter are, we look to the indications on that particular exhibit, correct? I believe that is one. I think we have actually submitted some other sketches, too, in the briefs. But those are different. This is the one that was, those are the ones that are rejected, too, right? But this is the one that was in the Collins declaration, correct? That is correct. I might also point out that there is no countervailing testimony at all in the case. We only have the declaration. But, I mean, if I want to understand what we mean by minimum and outer diameter, I should look to what is attached to Mr. Collins' declaration, correct? That, in addition to what we also have submitted in the briefs. And where is that in the briefs? Okay. In our reply brief, I would refer you to page 9. But that's different. Isn't, I mean, that, isn't, I mean, shouldn't we go with what's on A462? That's the clearest. And that's what Mr., that's what Mr. Collins, or Dr. Collins testified to. Well, the only thing that matters with respect to the maximum and minimum outer diameters is they're simply chords. And because they're diameters, they have to have the same center. And the outer extremities of those chords actually help define what the circumferential edge is. And the space between two portions of those diameter, or those chords, indicates the confluence. And the confluence indicates where the notch is. It's in the confluence. That's right here. Right in this area. That is correct. Okay. All right. That's fine. Thank you. Thank you, Mr. Lellerson. We'll save you rebuttal time. I beg your pardon? We'll save you rebuttal time. Thank you. We'll save you rebuttal time. Mr. Davis. Good morning, Your Honors. It pleases the court, Scott Davis representing the defendant appellee, GB2, doing business with CRKT. First, I'll, I'd like to add our response to a couple of the questions from Your Honors that came this morning because I think those went straight to the issues, and I'd like to make our position clear on those. They were good questions. First off, Judge Schall was asking about how you find a circumferential edge. And their response has always been, well, it can be imaginary and invisible, something you can't discern. Well, our position is, how can you measure it and figure out where the diameters are if you can't discern it? Whether or not it's protruding, we think it at least has to be something that's observable and discernible. It can't be invisible, and dictionary definitions of edge and circumference both support us on that, which we cited to the court at A536. You need at least some kind of external boundary to define a circumference. Moving on to other questions that came up. Again, from Judge Schall, the, going to the page A462, the Collins drawings at A462 and A463, that is where we looked. That's the only evidence that was before the district court or any material before the district court as to their position where the maximum and minimum diameters could be found. That's where we looked. We don't necessarily agree, to be clear, with the illustration at A462 that those are max and min diameters and that that's where you would find the notch or the confluence, but we went with it and we explained to the district court and to this court how accepting that construction results in a finding of no infringement, even if you accept what they've said about that, applying it to the accused product, which is what Walter Collins did at page A463 in those illustrations. And the reason for that is simple. Mr. Collins did not show any notch where the two diameters intersected that he drew onto the accused, what was meant to represent the accused product. There was a hole there, the place where the pivot shaft goes through. A notch can't be where the hole is. Do we have that? Where exactly in the record is that drawing? Do we have that? Absolutely, Your Honor. That's at A463, the very next page from the one that you're pointing to. A462 is an annotated version of an excerpted figure from the patent itself, and A463, well, it's not entirely clear because of our evidentiary objections that go to Collins. There's no authentication of exactly what A463 is anywhere in the record. He didn't lay a foundation for what it was, how it's prepared, and that sort of basic evidentiary material. But if you accept, as they seem to contend, that this is intended to be a drawing of the accused product, the Model 1090 CRKT-9, you can see on Figure 6 of A463 where the two diameters have been drawn in on the accused product. And the place where they meet is right in the middle of the hole in the center there, the pivot shaft hole. There's no notch there. There can't be a notch there where they intersect each other. In addition, Mr. Collins, neither in his testimony in the text of his declaration nor in this drawing, ever said that the spring was in the location required by the claims when the blade is folded. He never said that it's against the maximum outer diameter of what he called a set block when the blade is folded. That's a serious – all we need to show is one limitation missing on our side of this case, and I think that that's another one of them. In fact, he couldn't have shown it given the drawings he did here where he placed the maximum outer diameter in Figure 6. That's simply not where the spring would be located when the blade of the 1090 knife is folded, and there's nothing in the record that would show otherwise. In fact, the record evidence is just the opposite. It actually shows that the spring would be in a different spot on what he's called a set block in Figure 6. Again, unless the Court has any more questions about these drawings, I would like to move on to the claim differentiation point addressed by counsel. Please do. On that point, I think Judge Moore's questions cut straight to the issue on that claim differentiation simply does not apply as they argue it here. There's just no basis for it because of the extra limitation of a pivot shaft being required in both Claim 7 and Claim 8, a limitation that's not expressly present in Claim 1. I think I heard counsel suggest today that Claim 1 should be construed to necessarily include a pivot shaft. That's the first we've heard of that argument right here today, and I don't think there's a basis for it. But in any event, even if we did accept that, Claim 7 and 8 also may be distinguished on additional grounds. Claim 7 and 8 are both essentially copied verbatim from the specification in the patent. At the top of the first full paragraph of Column 5, they are both describing the same embodiment, which, by the way, relates back to Figure 3, which is consistently referred to as the invention in the patent and the only embodiment that's described. But in any event, Claims 7 and 8 are part of what begins on Column 4 as another most preferred embodiment, first describing the locking component, which can be added to the knife, and that's specifically claimed in dependent claims in the patent. Moving on to the top of Column 5, the patent says that in the specification, the said set block 7 is secured onto the said blade, such that the set block and the said blade become a single structural entity. Well, that's really their best argument, isn't it? Because that is part of the specification, to say that it's a single structural entity rather than separate structural entities. Well, Your Honor, it may be their best argument, but it can't carry the day here because the top of Column 5 is describing an embodiment that is Figure 3 again. And so in Claim 8, even though it says a single structural entity, the way that's made in terms of the patent and the only way disclosed to make a single structural entity of the set block and the blade that's disclosed anywhere in the patent is to do what Claim 7 says and secure the set block onto the blade. So you have two parts that are made into one. In fact, the claim language of Claim 1 supports that. It says that the said set block and the said blade in Claim 8 are made into a single structural entity, which itself implies that they were at one point separate and they've been made into a single structural entity. And the specification supports that, sheds further light on it. First full paragraph at the top of Column 5 very clearly says that the way you make a single structural entity as disclosed in this patent is to do what Claim 7 says, to secure the set block onto the blade. And that's described or illustrated, rather, in Figure 3 because at the bottom of Column 4 it says, in another most preferred embodiment of the invention herein, referring to Figure 3. And it continues on. The top of Column 5 is still referring to that same embodiment, the another most preferred embodiment. In the said embodiment, it again refers the reader back to Figure 3 to see what they're talking about. And indeed, what they're doing to make a single structural entity is to merely connect two pieces together, which in terms of Claim 7 is secured onto the blade. So we think there's multiple reasons why claim differentiation simply doesn't apply. And also, we believe that Claim 7 and 8 don't mean what the plaintiff reads them to mean. The made into a single structural entity, as described in this patent, simply doesn't mean that the parts were formed as one at the outset. So moving on, if I might, to some of the other points. Again, referring back to the Collins Declaration, we believe their case is a house of cards and it rests upon the Collins Declaration. That's the only evidence they put into the record for the district court to consider. We've set forth a variety of reasons, both at the district court level and evidentiary objections, and for this court, why Collins should just be disregarded in its entirety as evidence. It was offered as an expert declaration. It simply does not meet the standard for expert testimony. It doesn't identify any methodology, doesn't say what he did, doesn't say where the drawings attached to his declaration come from, and that doesn't meet this court's standards under the Novartis case we cited in our briefs, or the Sixth Circuit standard, the Brainard case also cited in our briefs. In addition to that, his testimony is wholly conclusory. On claim construction, he doesn't explain any reasons. He simply says the construction of this claim is as follows, and he sets forth his conclusion, which is no surprise, essentially verbatim copied from the plaintiff's brief below. He does the same thing for his literal infringement analysis. He simply says that the claim limitation is present, except as to the spring limitation, which as I just noted for the court, he left out part of that limitation and didn't find that it was present, that the spring was against the maximum outer diameter of the set block when the blade is folded. He simply offered no opinion on that and no illustration on that. So that's just a void in their case that they can't fill on appeal. Marching through Collins' declaration, the drawings attached to it are completely unauthenticated as we set forth in our briefs. He doesn't explain where they came from, what they are, that they accurately represent whatever they're intended to represent, and he provides no methodology going back to the expert point for the imaginary lines, as counsel is called, that have been drawn into that figure. So we think that Collins is entitled to no weight in the analysis and they have essentially no evidence on which their case can rest. And moving on to the other issues that relate to what's before this court versus what was in the record below. Again, Collins is the foundation of their case below. There's nothing more for them to rest their case on at an evidentiary level, which is what they need to create a genuine issue of fact, evidence, and they've tried to backfill in some way with additional annotations in their reply brief on appeal. Obviously, we moved to strike those, and the reason is they've characterized them as new argument or just illustrating their argument. We think, well, whether it be new argument, new exhibits, new evidence, new demonstratives, any of that, it's new and it fails for that reason and it should not be considered by this court whether it's stricken or not. It simply is no part of the analysis because it wasn't before the district court at the summary judgment stage. So it could be no basis for denying the summary judgment motion. So in addition to moving on to counsel's point on the doctrine of equivalence, again, Collins is their only evidence that goes to that. Those issues as well fails as a matter of law, but if you get into what he said about equivalence, it simply doesn't meet this court's requirements for particularized testimony and linking argument. The standards in Texas Instruments and progeny aren't satisfied on the function way result test as he attempts to set it forth. There's no limitation by limitation analysis in his declaration. Also, the district court- But there is identity of result, is there not? I'm sorry, Your Honor? In discussing the doctrine of equivalence because, again, coming back to question 80 and equivalent, of course, one doesn't expect to be included in the specification. So accepting your position that the structure is different somewhat, in that it is a single structural entity, they suggest that this broader interpretation should be given and it is somewhat supported there by Claim 8. And so what is the response to the position that the structure of function and result are substantially the same, although not identical, and not shown in the specification? Well, Your Honor, they're not the same, but the issue really before us today is whether there is any evidence before the district court on the equivalence that would satisfy this exacting standards on equivalence and establishing the functional way result test. Collins is totally conclusory on that and does not march through on a limitation by limitation analysis. He has two paragraphs in his declaration, and there's no more about the substance of the doctrine of equivalence in their evidence. He simply concludes at the end of paragraph 30 of his declaration at 8.460 that such components are structural and functional without anything further. And at paragraph 33, he really tries to get at the functional way result test, but with no meaningful analysis at all. You're saying even if they might turn out to be equivalent, in fact they haven't sufficiently placed the question before the trial court? Exactly right, Your Honor.  Thank you. And in addition to that, we think the legal bars that the district court applied the doctrine of specific exclusion and the all limitations rule also precluded finding of equivalence here. So you don't even get to the functional way result test. Okay. Any questions for Mr. Davis? Any questions? Thank you, Mr. Davis. Thank you, Your Honor. Mr. Lalas. Just two comments about me, Your Honor. First of all, Taylor Brands was not the moving party below. Therefore, it did not have the burden of having to show infringement, only a genuine issue of material fact. With respect to Claims 1 and 7, I would point out that Claim 1 provides for the blade being capable of rotating about the position of pivotal conjoinment and the set block situated in one side of the blade adjacent to the pivotal conjoinment position. Claim 7 simply provides for the set block being conjoined at one end of the handle and so forth, allowing the blade and the set block to rotate about the pivot shaft. In both instances, whether the set block is protruding or embedded within the tang portion of the blade, they both pivot about the axis of the pivotal connection of the blade with the handle. Thank you. Okay. Thank you. Thank you both. The case is taken under submission.